# UNITED STATES DISTRICT COURT FOR
## THE SOUTHERN DISTRICT OF NEW YORK

AMERICAN TRUCKING
ASSOCIATIONS, INC.; WADHAMS
ENTERPRISES, INC.; LIGHTNING
EXPRESS DELIVERY SERVICE INC.; and
WARD TRANSPORT & LOGISTICS
CORP., on behalf of themselves and all
others similarly situated,

*Plaintiffs,*

v.

NEW YORK STATE THRUWAY
AUTHORITY; NEW YORK STATE
CANAL CORPORATION; THOMAS J.
MADISON JR. in his official capacity as
Executive Director of the New York State
Thruway Authority; HOWARD MILSTEIN
in his official capacity as Chair of the New
York State Thruway Authority/Canal
Corporation Boards of Directors; DONNA J.
LUH in her official capacity as Vice-Chair of
the New York State Thruway
Authority/Canal Corporation Boards of
Directors; and E. VIRGIL CONWAY,
RICHARD N. SIMBERG, BRANDON R.
SALL, J. DONALD RICE JR., and JOSÉ
HOLGUÍN-VERAS in their official
capacities as members of the New York State
Thruway Authority/Canal Corporation
Boards of Directors,

*Defendants.*

Judge McMahon

13 CV 8123

Civil Action No. _____

## CLASS ACTION COMPLAINT



# INTRODUCTION

1.      This is a class-action complaint on behalf of all individuals and motor carriers

who, since November 14, 2010, have paid tolls to the New York State Thruway Authority for

trucks traveling in interstate commerce on Thruway Authority roads. The class seeks, among other things, a declaration that the truck-toll system employed by the Thruway Authority violates various provisions of the U.S. Constitution, an injunction against enforcement of that system in the future, and monetary relief for the illegal tolls exacted from the class members.

2.      The New York State Thruway is a major artery for commercial trucking, enabling the flow of goods and materials to and from New York, and to and from other states through New York. Over the course of the latter half of the twentieth century, the expansion of the Thruway and the rise of trucking as a dominant method of transport resulted in a dramatic decline in the commercial significance of New York's Canal System, a network of waterways that stretches across upstate New York. Once a vital link between the markets of the East Coast and suppliers in the Midwest, the Canal System is now primarily a recreational space for tourists.

3.      Maintaining the Canal System comes at steep price. The New York State Thruway Authority, which manages both the Thruway itself and the canals, drastically overcharges commercial truckers for the use of the roads that it administers. The Thruway Authority then siphons off the extra toll money, not to maintain or improve the roads that the truckers are paying to use, but to support the Canal System as a tourist attraction. The extent of the Thruway Authority's subsidization of the canals with Thruway truck-toll revenues is staggering. According to a report recently issued by the Office of the New York State Comptroller, the Thruway Authority has expended $1.1 billion on the Canal System since taking over management of it in 1992. And the expenditures have been rising: The Thruway Authority spent more than $80 million of toll money on the canals in 2007, and more than $100 million in 2012.

4.      As a tourist attraction, the Canal System is an economic boon to the villages, hamlets, and towns that line its 524 miles of waterways. Estimates suggest that canal-related tourism generates nearly $400 million in revenues yearly for those who live and do business along the canals. But those individuals and businesses do not bear the heavy economic burden of maintaining and operating the canals. Instead, the Thruway Authority has shifted that burden to

commercial truckers—the lifeblood of the American economy—by charging artificially inflated tolls for use of the Thruway and then spending the extra revenues on the Canal System.

5.     By imposing inflated tolls on truckers, the Thruway Authority violates truckers' constitutional rights under the Commerce Clause and the Privileges and Immunities Clauses of the U.S. Constitution. Together, these Clauses prohibit the Thruway Authority from discriminating against the truckers as interstate commercial actors and out-of-state citizens, bar truck-toll rates that are excessive in relation to the valid ends that those rates are designed to promote, require that truck-toll rates be based on a fair approximation of the truckers' use of the Thruway, and require that the toll rates be proportionate to the benefits that truckers receive for the tolls that they pay.

6.     The unconstitutionally excessive truck-toll rates charged by the Thruway Authority have real and substantial effects on interstate commerce, particularly in the face of the country's long, slow recovery from our latest recession. Artificially inflated tolls increase the costs of transporting goods, thus directly affecting truckers by reducing their revenue, compelling them to find different, cheaper routes through other states, and causing them to lose business to other modes of transport. The excessive tolls also increase businesses' costs for sending goods to other states, making it less profitable and less desirable for companies to enter or participate in the national market. And in the end, the excessive tolls harm consumers by raising the prices and reducing the variety of the goods that are available for purchase. The Thruway Authority's toll regime is thus not simply wreaking havoc on truckers' bottom lines; it is interfering with the efficient operation of the national economy and encouraging economic Balkanization at a time when we as a nation can least afford these extra burdens on the free flow of commerce. The resulting evils are the very ones that the Framers of the Constitution sought to prevent when they enacted the Commerce Clause and the Privileges and Immunities Clauses.

7.     Accordingly, Plaintiffs ask this Court to hold that the Thruway Authority's truck-toll rates violate the Commerce Clause and the Privileges and Immunities Clauses of Article IV and the Fourteenth Amendment by discriminating against interstate commerce and out-of-state

truckers, unduly burdening interstate commerce by enforcing tolls that are excessive in relation to the valid ends that those rates are designed to promote, by imposing fees that are not a fair approximation of truckers' use of the Thruway, and by requiring payments from truckers that are excessive in relation to the benefits received. Plaintiffs therefore seek declaratory and injunctive relief barring Defendants from continuing to collect unconstitutionally excessive truck tolls, as well as damages, disgorgement, recoupment, restitution, costs, attorneys' fees, and any other relief that the Court deems proper.

## JURISDICTION AND VENUE

8.     This Court has subject-matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1343 because Plaintiffs are seeking redress under 42 U.S.C. § 1983 for the deprivation, under color of state law, of the rights of citizens of the United States secured by the Constitution and federal law.

9.     Venue is proper under 28 U.S.C. § 1391(b).

## FACTS

**A.     The Parties To This Action.**

10.     This action is brought by several commercial trucking companies that have been negatively and directly affected by the Thruway Authority's unconstitutional toll regime, and by the trade association that exists to protect the interests of commercial truckers who travel New York's and the nation's roads, including the Thruway.

11.     Plaintiff American Trucking Associations, Inc. ("ATA"), is the largest national trade association for the trucking industry. Through a federation of other trucking groups, industry-related conferences, and 50 affiliated state trucking associations, ATA represents more than 30,000 members covering every type of motor carrier in the United States, including many that regularly carry freight to, from, and through the State of New York using the Thruway and pay tolls to the Thruway Authority. ATA's principal place of business is in Arlington, Virginia.

12.     The interests that ATA seeks to protect in this action are germane to the purposes of the association. Neither the claims nor the forms of relief sought in this action require participation by the association's individual members. One or more members of the association have standing to bring this action in their own right.

13.     Plaintiff Wadhams Enterprises, Inc., is family-owned and -operated transportation company with a fleet of approximately 300 tractors and 560 trailers. It is a member of ATA. Wadhams' principal place of business is in Phelps, New York. Wadhams uses the Thruway regularly in the course of conducting its business carrying freight to, from, and through the State of New York, and pays tolls to the Thruway Authority.

14.     Plaintiff Lightning Express Delivery Service Inc. is a shipping company that provides both trucking and warehousing services. It is a member of ATA. Lightning Express' principal place of business is in Modena, New York. Lightning Express uses the Thruway regularly in the course of conducting its business carrying freight to, from, and through the State of New York, and pays tolls to the Thruway Authority.

15.     Plaintiff Ward Transport & Logistics Corp. is a freight company that provides shipping and logistics services. It is a member of ATA. Ward Transport's principal place of business is in Altoona, Pennsylvania. Ward Transport uses the Thruway regularly in the course of conducting its business carrying freight to, from, and through the State of New York, and pays tolls to the Thruway Authority.

16.     Defendant New York State Thruway Authority was and is a public-benefit corporation organized and existing under, and by virtue of, a charter from the State of New York.

17.     The Thruway Authority is an autonomous public-benefit corporation, not the "alter ego" or an "arm" of the State of New York. *See Mancuso v. New York State Thruway Auth.*, 86 F.3d 289, 297 (2d Cir. 1996).

18.     Defendant Thomas J. Madison Jr. is the Executive Director of the Thruway Authority.

19.    Defendant Howard Milstein is the Chair of the New York State Thruway Authority/Canal Corporation Boards of Directors.

20.    Defendant Donna J. Luh is the Vice-Chair of the New York State Thruway Authority/Canal Corporation Boards of Directors.

21.    Defendants E. Virgil Conway, Richard N. Simberg, Brandon R. Sall, Donald Rice Jr., and José Holguín-Veras are members of the New York State Thruway Authority/Canal Corporation Boards of Directors.

22.    The Thruway Authority's principal place of business is in Albany, New York.

23.    The Thruway Authority has a broad array of statutory responsibilities.

24.    At all relevant times, the Thruway Authority was charged with managing transportation facilities in the State of New York.

25.    Among other facilities, the Thruway Authority operates the New York State Thruway.

26.    Under Section 5 of New York's Canal Law, the "powers and duties of the commissioner of transportation relating to the New York state canal system" were "transferred to and merged with the [Thruway Authority], to be exercised by the [Thruway Authority] on behalf of the people of the state of New York." N.Y. Canal Law § 5.

27.    In 1992, therefore, the New York State Canal Corporation (also a public-benefit corporation) was formed as a subsidiary of the Thruway Authority.

28.    The Canal Corporation was formed to operate, maintain, and promote the Canal System.

29.    Through the Canal Corporation, the Thruway Authority controls the maintenance and operation of the New York State Canal System. *See* JACOBS CIVIL CONSULTANTS, INC., N.Y. STATE THRUWAY FINANCIAL REQUIREMENTS & PROPOSED TOLL ADJUSTMENTS 2012-2016 ("JACOBS REPORT") II-6 (2012), *available at* http://www.thruway.ny.gov/news/pressrel/2804.pdf.

30.     Because the Canal Corporation is a subsidiary of the Thruway Authority and is controlled by it, and because the individually named Defendants are officers and directors of the Thruway Authority or the Canal Corporation in their official capacities, we use the term "Thruway Authority" to refer to all Defendants collectively.

**B.      The Thruway Is A Significant Instrumentality Or Channel Of Interstate Commerce.**

31.     The Thruway is a significant instrumentality or channel of interstate commerce.

32.     Encompassing approximately 570 miles of roadway, the Thruway is one of the largest tolled highway systems in the United States. *See Thruway Fact Book*, N.Y. STATE THRUWAY, http://www.thruway.ny.gov/about/factbook.html (last visited Nov. 12, 2013); JACOBS REPORT II-1.

33.     The Thruway is a vital commercial link to and from New York's largest cities, and to the entire Northeast region of the United States. *See Thruway Fact Book.*

34.     The mainline of the Thruway extends 426 miles, from New York City to Pennsylvania. *See Thruway Fact Book.*

35.     Other elements of the Thruway system include:

      a.   the New England Thruway (I-95), which links New York to Connecticut;

      b.   the Cross Westchester Expressway (I-287), which links New York to New Jersey;

      c.   the Garden State Parkway Connector, which similarly links New York to New Jersey; and,

      d.   the Berkshire Connector (I-90), which links New York to Massachusetts.

*See Thruway Fact Book.*

36.     Approximately 271 million vehicles travel more than 8 billion miles on the Thruway each year. *See Frequently Asked Questions (FAQs)*, N.Y. STATE THRUWAY, http://www.thruway.ny.gov/about/faqs.html (last visited Nov. 12. 2013).

37.     Among these vehicles are commercial trucks carrying goods within New York, between New York and other states, and from one state outside New York to another by way of New York.

38.     Commercial trucking firms using the Thruway include firms based within the State of New York and firms based outside New York.

39.     Approximately one-third of all vehicles using the Thruway are from out of state. *See Thruway Fact Book.*

40.     For commercial trucks, the percentage from out of state, or else traveling to or from another state, is much higher yet.

41.     Commercial vehicles make up 10% of annual traffic on the Thruway. *See* JACOBS REPORT IV-3.

42.     This commercial-truck traffic accounts for approximately 37% of Thruway revenues. *See* JACOBS REPORT IV-3.

43.     Commercial users of the Thruway thus bear a significant portion of the costs associated with operating and maintaining the Thruway.

**C.     The Thruway Is A User-Supported System.**

44.     The Thruway Authority receives no tax dollars from the State of New York. *See Thruway Fact Book.*

45.     The Thruway Authority receives only a small amount of federal aid. The approximately $2.9 million in federal transportation dollars that the Thruway Authority was slated to receive in 2012 represents just 0.3% of the Thruway Authority's total budget. *See* N.Y. STATE THRUWAY AUTH. & CANAL CORP., 2012 BUDGET 4 (2011), http://www.thruway.ny.gov/about/financial/budgetbooks/books/2012-budget.pdf.

46.     The Thruway Authority depends almost entirely on toll revenues to operate, maintain, and police the roads and bridges that it administers.

47.     Because it relies on toll revenues, the Thruway is, in the Thruway Authority's own words, "strictly a user-supported [s]ystem." *See Thruway Fact Book.*

48.     Only motorists who use the Thruway pay for it. *See Thruway Fact Book.*

49.     As a consequence, the burdens of operating and maintaining the Thruway are borne almost entirely by those individuals and businesses, both within and outside New York, who actually travel on the Thruway.

50.     The Thruway collects tolls through two primary systems: a controlled (ticket) system and a barrier system. *See* JACOBS REPORT II-1.

51.     The controlled system covers the largest portion of the Thruway. *See* JACOBS REPORT II-1.

52.     Within the controlled-system portion, the tolls charged are based on the actual distance that the vehicle travels on the system, as well as the vehicle's class and the method of payment that the driver uses. *See* JACOBS REPORT II-1.

53.     Vehicle class (which determines the toll scale) is tied to the vehicle's height and number of axles. *See* JACOBS REPORT II-1.

54.     Taller vehicles and vehicles with more axles pay more per mile for use of the Thruway. *See* JACOBS REPORT VII-1.

55.     For example, within the controlled system in the year 2010, a two-axle "low" vehicle (such as an ordinary passenger automobile) paying with cash was charged 0.047 cents per mil; a three-axle low vehicle was charged 0.0728 cents per mile; and a four-axle low vehicle was charged 0.0864 cents per mile. For "high" vehicles (i.e., those that are seven-feet six-inches tall or greater), the tolls ranged from 0.0933 cents per mile for a two-axle vehicle to 0.3536 cents per mile for a seven-axle vehicle. *See* JACOBS REPORT VII-1; *Vehicle Classification Information*, N.Y. STATE THRUWAY, http://www.thruway.ny.gov/travelers/tolls/classes.html (last visited Nov. 12, 2013).

56.     The barrier system features fixed toll rates, based on the class of vehicle traveling on the Thruway and the type of payment used. *See* JACOBS REPORT II-1.

57.     For example, at the Tappan Zee Bridge toll barrier in 2010, tolls for vehicles paying with cash ranged from $5.00 for two-axle low vehicles to $49.25 for seven-axle high vehicles. *See* JACOBS REPORT VII-1.

58.     The Thruway Authority also collects certain non-toll revenues, including payments from concessionaires at the Thruway service areas, sales of surplus property, issuance of special hauling permits, administrative fees from E-ZPass toll violators, contracts for fiber-optic lines along the Authority's rights of way, interest on invested funds, and other miscellaneous sources. *See* JACOBS REPORT III-7.

59.     These non-toll sources of revenue represent only a small percentage of the Thruway Authority's total revenue.

60.     For example, non-toll sources of revenue totaled $31.3 million in 2010 and $31.4 million in 2011—only 4.7% of the Thruway Authority's total revenue those years. *See* JACOBS REPORT III-7.

**D.     The Canal System Is An Economic-Development Project With Significant Local Benefits.**

61.     The Thruway Authority also administers the Canal System.

62.     In its current form, the Canal System comprises approximately 524 miles of canals, including the Erie Canal, the Oswego Canal, the Cayuga-Seneca Canal, the Champlain Canal, and canalized natural waterways, as well as five lakes (the Oneida, Onondaga, Cross, Cayuga, and Seneca). *See About the Canal Corporation*, N.Y. STATE CANALS, http://www.canals.ny.gov/about/about.html (last visited Nov. 12, 2013); JACOBS REPORT IV-2.

63.     In 1992, the New York State legislature enacted legislation that transferred the Canal System from the New York State Department of Transportation (which had previously administered the canals) to the Thruway Authority.

64.     As a result of this transfer, New York no longer had to support the Canal System from the State's general fund.

65.     The Canal System is a recreation-way and tourist destination. *See* JACOBS REPORT II-6.

66.     The canals used to be an important commercial shipping artery, but now they are seldom used for shipping.

67.     In connection with its management of the canals, the Thruway Authority also maintains more than 260 miles of recreational trails across upstate New York that are adjacent to the waterways of the current Canal System or follow remnants of historic canals that date back to the early 1800s. *See* JACOBS REPORT II-7. The trails are not used for the commercial transportation of goods.

68.     The Thruway Authority has invested in the Canal System in order to promote the economic development of the more than 200 villages, hamlets, and towns along the canals and associated trails. *See* CARMELLA R. MANTELLO, THE N.Y. STATE CANAL CORP. 63 (2009), http://minerva.union.edu/garverj/mohawk/symposium/20_Mantello.pdf.

69.     Businesses operating in these locations have benefitted substantially from the Thruway's funding of the Canal System.

70.     Individuals living in these areas have likewise benefited from the development of the Canal System.

71.     According to an economic-impact study commissioned in 2002, the Canal System contributes more than $384 million annually in the form of tourism dollars directed to communities in upstate New York. *See* MANTELLO, THE N.Y. STATE CANAL CORP. 63.

72.     The Canal Corporation states that its Canal Revitalization Program has "provided dozens of communities with increased public access to the canal, new and improved trail linkages and enhanced economic opportunities." *See* MANTELLO, THE N.Y. STATE CANAL CORP. 65.

**E.      The Thruway Authority Makes Substantial Expenditures Every Year To Maintain The Canal System.**

73.     The Canal System is neither self-sustaining nor self-funded.

74.    Instead, the Thruway Authority diverts large sums from Thruway toll revenues to support the canals and trails.

75.    A recent investigation by the Office of the New York State Comptroller reveals that the Canal System has consumed more than $1.1 billion of Thruway resources since 1992. *See* OFFICE OF THE STATE COMPTROLLER, ASSESSMENT OF THE THRUWAY AUTHORITY'S FINANCES & PROPOSED TOLL INCREASE ("Comptroller's Assessment") 7 (2012), http://www.osc.state.ny.us/reports/thruway_policy_08142012.pdf.

76.    The Thruway Authority's yearly expenditures on the Canal System have been rising steadily since 1992. *See* Comptroller's Assessment 8.

77.    Since 2007, the Thruway Authority's expenditures on the Canal System—including operating, development fund, and capital expenses—have exceeded $80 million each year. *See* Comptroller's Assessment 8. To meet these expenses, the Thruway Authority has long redirected Thruway toll revenues to the Canal System.

78.    The Thruway Authority reports its canal-related expenditures in its annual financial statements.

79.    In the year 2009, total operating expenses (excluding depreciation and amortization) for the Thruway, the Canal Corporation, and other Thruway Authority projects were $462.8 million. *See* N.Y. STATE THRUWAY AUTH., AUDITED FINANCIAL STATEMENTS: DEC. 31, 2010 & 2009, at 3 (2011), http://www.thruway.ny.gov/about/financial/ar/2010-audited-financial-statements.pdf.

80.    The Thruway Authority generated $640.6 million in total operating revenue. *See* N.Y. STATE THRUWAY AUTH., AUDITED FINANCIAL STATEMENTS: DEC. 31, 2011 & 2010, at 7 (2012), http://www.thruway.ny.gov/about/financial/ar/2011-audited-financial-statements.pdf.

81.    Of that $640.6 million, $611.6 million was derived from tolls. *See* N.Y. STATE THRUWAY AUTH., AUDITED FINANCIAL STATEMENTS: DEC. 31, 2011 & 2010, at 7.

82.    All told, the Thruway Authority's non-toll sources of revenue—including all revenue from canal fees as well as from all other sources—accounted for only $29 million in

-12-

operating revenue. *See* N.Y. STATE THRUWAY AUTH., AUDITED FINANCIAL STATEMENTS: DEC. 31, 2011 & 2010, at 7.

83.    In the year 2009, operating expenditures on the canals totaled at least $62.6 million. *See* N.Y. STATE THRUWAY AUTH., AUDITED FINANCIAL STATEMENTS: DEC. 31, 2011 & 2010, at 7. Any capital expenditures on the canals were in addition to that amount.

84.    Recent estimates show that the canals generate only approximately $2 million dollars in user fees annually. *See* Freeman Klopott & Martin Z. Braun*, Cuomo Gets Truckers to Pay for Erie Canal Fix that Eluded Dad*, BLOOMBERG (Aug. 2, 2012), http://www.bloomberg.com/news/2012-08-02/cuomo-gets-truckers-to-pay-for-erie-canal-fix-that-eluded-father.html (citing NAVIGANT CAPITAL ADVISORS, N.Y. STATE THRUWAY AUTH. EXECUTIVE SUMMARY REPORT 41 (2012), http://www.thruway.ny.gov/news/pressrel/letter-navigant.pdf).

85.    A large percentage of the expenditures on the canals came from Thruway toll revenues, not from canal fees or other non-toll sources.

86.    In the year 2010, total operating expenses (excluding depreciation and amortization) for the Thruway, the Canal Corporation, and other Thruway Authority projects were $464 million. *See* N.Y. STATE THRUWAY AUTH., AUDITED FINANCIAL STATEMENTS: DEC. 31, 2010 & 2009, at 3.

87.    The Thruway Authority generated $674.3 million in total operating revenue. *See* N.Y. STATE THRUWAY AUTH., AUDITED FINANCIAL STATEMENTS: DEC. 31, 2011 & 2010, at 7.

88.    Of that $674.3 million, $641.2 million was derived from tolls. *See* N.Y. STATE THRUWAY AUTH., AUDITED FINANCIAL STATEMENTS: DEC. 31, 2011 & 2010, at 7.

89.    All told, the Thruway Authority's non-toll sources of revenue—including all revenue from canal fees as well as from all other sources—accounted for only $33.1 million in operating revenue. *See* N.Y. STATE THRUWAY AUTH., AUDITED FINANCIAL STATEMENTS: DEC. 31, 2011 & 2010, at 7.

90.     In the year 2010, operating expenditures on the canals totaled at least $61.6 million. *See* N.Y. STATE THRUWAY AUTH., AUDITED FINANCIAL STATEMENTS: DEC. 31, 2011 & 2010, at 7. Any capital expenditures on the canals were in addition to that amount.

91.     A large percentage of the expenditures on the canals came from toll revenues, not from canal revenues or other non-toll sources.

92.     In the year 2011, total operating expenses (excluding depreciation and amortization) for the Thruway, the Canal Corporation, and other Thruway Authority projects were $481.8 million. *See* N.Y. STATE THRUWAY AUTH., AUDITED FINANCIAL STATEMENTS: DEC. 31, 2011 & 2010, at 7.

93.     The Thruway Authority generated $667.5 million in total operating revenue. *See* N.Y. STATE THRUWAY AUTH., AUDITED FINANCIAL STATEMENTS: DEC. 31, 2011 & 2010, at 7.

94.     Of that $667.5 million, $634.1 million was derived from tolls. *See* N.Y. STATE THRUWAY AUTH., AUDITED FINANCIAL STATEMENTS: DEC. 31, 2011 & 2010, at 7.

95.     All told, the Thruway Authority's non-toll sources of revenue—including all revenue from canal fees as well as from all other sources—accounted for only $33.4 million in operating revenue. *See* N.Y. STATE THRUWAY AUTH., AUDITED FINANCIAL STATEMENTS: DEC. 31, 2011 & 2010, at 7.

96.     In the year 2011, operating expenditures on the canals totaled at least $67.7 million. *See* N.Y. STATE THRUWAY AUTH., AUDITED FINANCIAL STATEMENTS: DEC. 31, 2011 & 2010, at 7. Any capital expenditures on the canals were in addition to that amount.

97.     A large percentage of the expenditures on the canals came from toll revenues, not from canal revenues or other non-toll sources.

98.     In the year 2012, total operating expenses (excluding depreciation and amortization) for the Thruway, the Canal Corporation, and other Thruway Authority projects were $473.5 million. *See* N.Y. STATE THRUWAY AUTH., AUDITED FINANCIAL STATEMENTS: DEC. 31, 2012 & 2011, at 4 (2013).

99.    The Thruway Authority generated $673 million in total operating revenue. *See* N.Y. STATE THRUWAY AUTH., AUDITED FINANCIAL STATEMENTS: DEC. 31, 2012 & 2011, at 8.

100.    Of that $673.0 million, $637.7 million derived from tolls. *See* N.Y. STATE THRUWAY AUTH., AUDITED FINANCIAL STATEMENTS: DEC. 31, 2012 & 2011, at 8.

101.    All told, the Thruway Authority's non-toll sources of revenue—including all revenue from canal fees as well as from all other sources—accounted for only $35.3 million in operating revenue. *See* N.Y. STATE THRUWAY AUTH., AUDITED FINANCIAL STATEMENTS: DEC. 31, 2012 & 2011, at 8.

102.    In the year 2012, operating expenditures on the canals totaled at least $65.8 million. *See* N.Y. STATE THRUWAY AUTH., AUDITED FINANCIAL STATEMENTS: DEC. 31, 2012 & 2011, at 8. Any capital expenditures on the canals were in addition to that amount.

103.    A large percentage of the expenditures on the canals came from toll revenues, not from canal revenues or other non-toll sources.

**F.    To Meet Increasing Costs And Projected Future Needs Of The Canal System, The Thruway Authority Has Proposed To Increase Thruway Tolls And To Divert Even Larger Sums From The Roads To The Canals.**

104.    In order for the Thruway Authority to meet its obligations to maintain the Canal System, the Authority's huge annual expenditures of toll revenues will continue.

105.    The Thruway Authority has estimated that it will cost another $436.5 million to maintain, repair, and operate the Canal System between 2013 and 2016—an average annual expenditure of approximately $109.1 million. *See* Comptroller's Assessment 7.

106.    In 2012, and in keeping with its long-running historical practice, the Thruway Authority once again looked to commercial truckers using its roadways to offset canal costs.

107.    The Thruway Authority proposed and considered increasing tolls on commercial trucks with three or more axles using the Thruway. *See* Tom Precious, *Cuomo Drops Thruway Toll Hike*, BUFFALO NEWS, Dec. 18, 2012, at A1 [Exhibit 1]; Justin Mason, *Truck Toll Hike*

*Opposition Cites Harm to State Recovery*, THE DAILY GAZETTE (Schenectady, N.Y.), Sept. 6, 2012, at A1 [Exhibit 2].

108.    The toll increases were projected to generate $90 million of additional revenue yearly. *See* Tom Precious, *Cuomo Drops Thruway Toll Hike*, at A1.

109.    This additional revenue would roughly equate to the Thruway Authority's average yearly expenditures on the Canal System for the period spanning 2007 to 2012. *See* Comptroller's Assessment 8.

110.    State officials have expressly and publicly acknowledged that the proposed hike represented simply another iteration of the Thruway Authority's long-running practice of subsidizing the Canal System with Thruway toll revenues.

111.    New York State Senator Patrick Gallivan, chairman of the Senate's Commerce, Economic Development, and Small Business Committee, decried the toll hike, stating: "[A]nnual revenue from the canal system totals only $2 million, a small fraction of its annual cost. This gap in revenue has to be covered each and every year by commuters and commercial drivers using the Thruway." Ben Beagle, *Gallivan Plan Would Separate Canal System, T-way Authority*, DAILY NEWS (BATAVIA, N.Y.), Sept. 8, 2012, at 9A [Exhibit 3].

112.    In an op-ed in *The Post-Standard* (Syracuse, NY), State Comptroller Thomas P. DiNapoli similarly condemned the proposed hike, noting that "[m]ore than $1 billion of Thruway toll revenues have gone to pay operating and capital costs for the canals in the two decades since" New York transferred responsibility for the Canal System from the Department of Transportation to the Thruway Authority. Thomas P. DiNapoli, *Thruway Toll Hike Comptroller: Get Your Own House in Order First*, SYRACUSE POST-STANDARD, Aug. 21, 2012, at A13 [Exhibit 4].

113.    Although the Thruway Authority ultimately abandoned the proposed toll hike after strong public resistance, it did not stop its practice of subsidizing the Canal System at commercial truckers' expense.

G.     **The Thruway Authority's Artificially Inflated Truck Tolls Inflict Significant And Unconstitutional Costs On Commercial Truckers Traveling In Interstate Commerce.**

114.    There is no functional relationship between the Thruway and the Canal System.

115.    The existing funding scheme for the Canal System requires trucks engaged in interstate commerce to bear costs above and beyond the costs associated with their use of the Thruway.

116.    Commercial truckers bear a large share of the costs to support the canals while deriving few if any benefits from them, and no benefits that are actually related to the tolls paid.

117.    The benefits of the Canal System accrue instead to individuals, corporations, towns, villages, and hamlets located along the canals—primarily in the form of economic gains from increased tourist traffic and recreational use of the canals.

118.    Under the existing governance scheme for the Canal System, these in-state individuals and entities do not bear the substantial financial burdens associated with administering and operating the canals.

119.    Through their toll payments, commercial truckers thus pay the Thruway Authority both for benefits that they receive—use of the Thruway—and for benefits to others that the truckers do not receive and that have no relation to the roads.

120.    The tolls charged by the Thruway to commercial truckers are not a fair approximation of the truckers' use of the Thruway.

121.    The Thruway's truck tolls are excessive in relation to the benefits received by the truckers.

122.    The Thruway's truck tolls discriminate against interstate commerce.

123.    On information and belief, the Thruway Authority has designed the existing toll structure and practice of cross-subsidizing the Canal System through Thruway revenues with the intent to discriminate against interstate commerce.

124.    Other means of supporting the Canal System could be implemented by the Thruway Authority or the State of New York.

125.    These other means include, for example, restoring the Canal System to its previous status as a project supported by revenues from the State of New York's general fund.

126.    Under that arrangement, the costs associated with the Canal System would be borne by all New York taxpayers—including those canal-zone residents and businesses that benefit most from the canals—rather than burdening interstate commerce and out-of-state truckers.

127.    The artificial inflation of the rates charged to commercial truckers using the Thruway has significant effects on interstate commerce.

128.    The cost of traveling on toll roads affects the routes that trucking companies follow in transporting goods and materials, the costs that they must bear, and ultimately the prices that they must charge for transporting goods and materials.

129.    Trucking companies respond to higher prices on toll roads by, among other things, decreasing their use of those roads, and when out-of-state routes are available, increasing their use of the roads in other states.

130.    Truckers cannot always change their routes, however, thus requiring price increases to compensate for their increased costs, as well as reduced revenues for the trucking companies. *See* Ted Booker, *Toll Increases Worry Carriers*, ADVANCE-NEWS (OGDENSBURG, N.Y.), Sept. 16, 2012, at 2 [Exhibit 5].

131.    Rate increases can cause truckers to lose business to other modes of transport.

132.    When trucking rates increase, costs from the inflated tolls are often also passed on to the businesses that are shipping the goods.

133.    The excessive tolls thus increase businesses' costs for sending goods to other states, making it less profitable and less desirable for companies to enter or participate in the national market.

134.    Increased truck tolls are in part passed through to consumers throughout the country in the form of higher prices for goods, including staple goods such as food and clothing. *See* Ted Booker, *Toll Increases Worry Carriers*, at 2.

135.   In some circumstances, increased costs from tolls may eliminate consumers' access to certain goods entirely by deterring the interstate transport of those goods, thus reducing the variety of goods available to consumers.

## CLASS-ACTION ALLEGATIONS

136.   In accordance with Rules 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure, Plaintiffs bring this action on behalf of themselves and the class of:

> All individuals and motor carriers who, since November 14, 2010, have paid tolls to the Thruway Authority for trucks that were traveling in interstate commerce on Thruway Authority roads.

137.   The members of the class are so numerous as to render joinder impracticable. On information and belief, each month tens of thousands of individuals and motor carriers pay tolls for commercial trucks that are traveling in interstate commerce on Thruway Authority roads.

138.   This action presents questions of law and fact that are common to the entire class and that affect the rights of all class members. All class members possess constitutional rights that the Thruway Authority has infringed during the class period.

139.   The Thruway Authority has acted in a common manner toward all members of the class by, among other things, promulgating and enforcing a generally applicable truck-toll regime. The common questions of law and fact that unite all members of the class relate to the Thruway Authority's promulgation and enforcement of its system of truck tolls and the legal question whether the Thruway Authority's truck-toll policies and practices are constitutionally permissible.

140.   Plaintiffs' claims are typical of all class members' claims in that the named Plaintiffs have paid the unconstitutional tolls just as all the class members have; and by virtue of their continued use of the Thruway Authority's toll roads, Plaintiffs will continue to pay the unconstitutional tolls unless this Court enjoins the Thruway Authority from maintaining its unconstitutional truck-toll regime.

141. Plaintiffs have the requisite personal interest in the outcome of this action and will fairly and adequately protect the interests of the class. Plaintiffs have no interests that are adverse to the interests of the class members.

142. Counsel for the named Plaintiffs are qualified, experienced, and able to conduct this litigation. Counsel will fairly and adequately protect the interests of the class.

143. This action is properly maintained as a class action because the Thruway Authority has acted or refused to act on grounds generally applicable to the class, thereby making it appropriate to issue final injunctive relief or corresponding declaratory relief with respect to the class as a whole. Plaintiffs and all the class members have suffered violations of their constitutional rights and sustained monetary damages as a result of a generally applicable truck-toll regime that the Thruway Authority has promulgated and has enforced against the class.

144. The questions that are common to the class predominate over any questions that affect only individual class members. Questions of law and fact that unite the class—including questions regarding the Thruway Authority's maintenance of its system of truck tolls and the constitutionality of that system—will command most of the Court's and the parties' attention, with subsidiary questions of the amount of money damages suffered by each class member requiring less attention.

145. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Joinder of all individual members of the class would be impracticable given the large number of class members and the fact that the class members are dispersed over a large geographical area. Furthermore, the expense and burden of individual litigation would make it difficult or impossible for individual members of the class to obtain redress for the wrongs done to them. The judicial resources required to adjudicate thousands of individual cases would be enormous. Individualized litigation would also magnify the delay and expense to all parties. By contrast, the conduct of this action as a class action in this District would present far fewer management difficulties, conserve judicial and party resources, protect

the rights of each member of the class, and permit resolution of this controversy efficiently, in a single proceeding.

146.    On information and belief, there are no other actions pending to address the Thruway Authority's conduct that is the subject of this action.

147.    This action seeks declaratory and injunctive relief, among other remedies. As such, Plaintiffs request class certification under Rule 23(b)(2) of the Federal Rules of Civil Procedure, in that all class members were and are subject to the same unconstitutional truck-toll policies, and the class members' individual monetary damages are incidental to the existence of the unconstitutional truck-toll policies. In addition, Plaintiffs request certification under Rule 23(b)(3) because they seek monetary relief in the form of damages, disgorgement, recoupment, or restitution. Finally, insofar as this Court determines that class certification is proper for some but not all issues presented by this Complaint, Plaintiffs seek partial certification under Rule 23(c)(4).

## CLAIMS FOR RELIEF

## COUNT ONE

### THE THRUWAY AUTHORITY'S ARTIFICIALLY INFLATED TRUCK TOLLS VIOLATE THE COMMERCE CLAUSE AND 42 U.S.C. § 1983.

148.    Paragraphs 1-147 are incorporated as if set forth in full.

149.    The Thruway Authority's enactment, implementation, and enforcement of its artificially inflated truck-toll rates have deprived, and will continue to deprive, Plaintiffs of rights secured by the Commerce Clause of the United States Constitution and 42 U.S.C. § 1983 because they are motivated by the intent to discriminate against interstate commerce.

150.    The Thruway Authority's truck-toll rates violate the Commerce Clause and 42 U.S.C. § 1983 because they discriminate against interstate commerce in their practical effect.

151.   The Thruway Authority's truck-toll rates violate the Commerce Clause and 42 U.S.C. § 1983 because they are not based on a fair approximation of commercial truckers' use of the Thruway and because they are excessive in relation to the benefits conferred on commercial truckers for paying those tolls.

152.   Defendants Thomas J. Madison Jr., Howard Milstein, Donna J. Luh, E. Virgil Conway, Richard N. Simberg, Brandon R. Sall, Donald Rice Jr., and José Holguín-Veras, acting in their official capacities as supervisors or administrative officers of Defendant Thruway Authority, instituted, authorized, ratified, permitted, or acquiesced in the enactment, continuation, and enforcement of the unconstitutional truck-toll rates.

153.   As a direct and proximate result of Defendants' violation of Plaintiffs' constitutional rights, Plaintiffs have sustained damages or are entitled to restitution, disgorgement, or recoupment in the amount of the excess tolls collected from Plaintiffs that have been used to support the Canal System.

154.   Unless the charging of truck tolls beyond the constitutionally permissible amount for a user fee is enjoined, Plaintiffs will suffer irreparable harm.

## COUNT TWO

### THE THRUWAY AUTHORITY'S ARTIFICIALLY INFLATED TRUCK TOLLS VIOLATE THE PRIVILEGES AND IMMUNITIES CLAUSES AND 42 U.S.C. § 1983.

155.   Paragraphs 1-154 are incorporated as if set forth in full.

156.   The Thruway's enactment, implementation, and enforcement of its artificially inflated truck-toll rates have deprived, and will continue to deprive, Plaintiffs of rights secured by the Privileges and Immunities Clauses of Article IV and the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

157.   The Thruway Authority's truck-toll rates violate the Privilege and Immunities Clauses and 42 U.S.C. § 1983 because they discriminate against interstate commerce and out-of-state commercial truckers in both their intent and their practical effect.

-22-

158.    The Thruway Authority's truck-toll rates violate the Privileges and Immunities Clauses and 42 U.S.C. § 1983 because the discrimination against out-of-state truckers and against interstate commerce is not sufficiently justified. The toll rates are excessively high in relation to the valid end that they are designed to promote—the continued operation, maintenance, and development of the Thruway—particularly in light of the range of alternative, nondiscriminatory methods for funding the Canal System that are available.

159.    The Thruway Authority's truck-toll rates violate the Privileges and Immunities Clauses and 42 U.S.C. § 1983 because they are not based on a fair approximation of commercial truckers' use of the Thruway and because they are excessive in relation to the benefits conferred on commercial truckers for paying those tolls.

160.    Defendants Thomas J. Madison Jr., Howard Milstein, Donna J. Luh, E. Virgil Conway, Richard N. Simberg, Brandon R. Sall, Donald Rice Jr., and José Holguín-Veras, acting in their official capacities as supervisors or administrative officers of Defendant Thruway Authority, instituted, authorized, ratified, permitted, or acquiesced in the enactment, continuation, and enforcement of the discriminatory truck-toll rates and the transfer of the resulting revenues to the Canal Corporation for expenditure on the Canal System.

161.    As a direct and proximate result of Defendants' violation of Plaintiffs' constitutional rights, Plaintiffs have sustained damages in the amount of the excess tolls collected from Plaintiffs that have been used to support the Canal System.

162.    Unless the charging of truck tolls beyond the constitutionally permissible amount for a user fee is enjoined, Plaintiffs will suffer irreparable harm.

## PRAYER FOR RELIEF

For Defendants' violations of Plaintiffs' constitutional rights, Plaintiffs respectfully request:

A.   An order certifying this action as a class action under Rule 23(b)(2) and Rule 23(b)(3), appointing Plaintiffs' counsel as class counsel, and requiring notice to class members as required by Rule 23(c);

B.   A declaratory judgment that the Thruway Authority's discriminatory truck-toll rates and subsidization of the Canal System with Thruway truck-toll revenues is unconstitutional and improper;

C.   A permanent injunction enjoining Defendants from continuing to implement or enforce the Thruway Authority's discriminatory truck-toll rates and from continuing to subsidize the Canal System with truck-toll revenues;

D.   An award of damages, disgorgement, recoupment, or restitution to the named Plaintiffs and the class members in an amount to be determined by the Court;

E.   A monetary award for attorneys' fees and the costs of this action, including, where applicable, expert-witness fees, in accordance with 42 U.S.C. § 1988 and Fed. Rule Civ. P. 23(h); and,

F.   Any other relief for the named Plaintiffs and each member of the class that the Court deems proper.

Dated: November 14, 2013

By: _____

Andrew E. Tauber
MAYER BROWN LLP
1999 K Street, N.W.
Washington, District of Columbia 20006-1101
Telephone: (202) 263-3000
Facsimile: (202) 263-3300

Attorney for Plaintiffs

-24-

# Exhibit 1

Westlaw.

**News**Room

12/18/12 BUFFALONWS A1

Page 1

12/18/12 Buff. News A1
2012 WLNR 28305260
Loaded Date: 01/09/2013

Buffalo News (NY)
Copyright 2012 The Buffalo News

December 18, 2012

Section: News

Cuomo drops Thruway toll hike \

Tom Precious - News ALBANY BUREAU

ALBANY ? After spending months defending a plan to hike Thruway tolls on trucks by 45 percent, the Cuomo administration Monday abruptly changed course and decided to drop what business groups had called a $90 million backdoor tax on consumers during a struggling state economy.

Administration officials confirmed the Thruway Authority and the Governor's Office have devised a new proposal that calls for no increase in tolls, instead drawing on a series of cost savings to make up for the $90 million in annual revenues the toll hike was projected to bring in to the state coffers.

The toll increase, proposed by the Thruway leadership Cuomo put in place at the agency, was to have gone into place earlier this fall to correct the finances of the state authority that controls the 500-mile highway system as well as the state's canal waterways.

State officials, including Cuomo, had defended the increase as unfortunate but necessary in order to protect the agency's Wall Street bond ratings, which determine interest rates on borrowings by the Thruway; the agency is expected to be borrowing potentially billions of dollars to finance a new bridge project across the Hudson River.

Cuomo recently began to push back against the sizable 45 percent increase, saying it needed to be done only as a "last resort" and only if all other alternatives were first explored by Thruway officials.

The governor told reporters that the Thruway agency now envisions no toll hike on the highway for at least the next three years.

But he stopped short of guaranteeing no tolls would rise during that time, citing unknown financial or other circumstances that might arise.

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

"My position was that the toll increase would be a last resort. I thought it would be counterproductive," Cuomo said.

"I understand the financial necessities, but I thought it would be counterproductive from an economic development point of view, especially in upstate New York," he added.

Cuomo acknowledged the complaints of business groups. "We've worked very hard to say to business that it's a new day in New York and that we got it, and we're working on reducing costs, and New York is not going to be the high-tax state, the high-cost state, the high-regulation state ? I thought it would send the wrong signal, especially at this time when we're working so hard to send a different signal," the governor added.

Thruway Executive Director Thomas Madison said officials in recent months devised an alternative plan to reduce costs ? with such things as staff cutbacks through attrition, sharing services with other state agencies, reducing new vehicle costs and refinancing debt ? to help reduce the need for the $90 million toll hike.

Most of the savings will come from the Thruway ending its payments to the State Police for its Troop T police coverage along the highway system; that $60 million a year will now be folded into the state's general fund budget as an obligation.

"It's a very special day for the Thruway Authority," Madison said.

Eliminating the toll hike was expected to be formally approved by the authority's board when it votes on the agency's 2013 budget.

Business groups ? ranging from those representing trucking companies, farmers and department stores ? had blasted the toll plan as a backdoor tax hike that would be passed on to consumers in the form of higher prices on any product shipped along the statewide highway.

The Thruway Authority had a scheduled meeting later Monday, but sources say the toll increase matter was taken off the agenda.

Instead, the board members were to consider the new design plans for Cuomo's proposed Tappan Zee Bridge project over the Hudson River between Westchester and Rockland counties.

Cuomo received enormous pressure against the proposal from a range of business groups ? the same organizations that he has been wooing since he took office two years ago with a mantra that New York State is open for business and wants to be considered a friendly environment for attracting and retaining companies.

Some lawmakers have been pressing Cuomo to let the Thruway Authority get rid of a major cost item ? main-

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

taining the state's canal system, including the Erie Canal.

That money-losing operation was put onto the Thruway's books in the early 1990s as a way for the state to save money in its main, general fund budget. State Comptroller Thomas DiNapoli said months ago the agency needed to explore ways to bring its expenses down to better match revenues. Some lawmakers also were demanding a detailed audit of the agency before any toll plan could go forth.

"I'm shocked," Kendra Hems, president of the New York State Motor Truck Association, said Monday morning when told of the toll increase coming off the table.

"We're very pleased that the Thruway Authority has decided to stop pursuing a crippling 45 percent toll increase on commercial trucks using the highway. The hike would have devastated the entire state's economy and nullified any attempts to make New York ?open for business.' It is our sincere hope that any future proposal to close their budget shortfall is crafted with careful consideration to the impact it will have on the highway's users, and the state as a whole," Hems said.

"It's a victory for Western New York and for New York State," said State Sen. Tim Kennedy, a Buffalo Democrat, who noted the opposition heated up during a public hearing in Buffalo earlier this year.

"We stood up in a unified voice starting in Western New York calling on the authority to change course and not increase tolls, and at the end of the day, we were victorious because we stood up together and forced their hand," Kennedy said.

The Thruway Authority's toll hike plan has been on a classic Albany-style roller coaster ride since first being unveiled in May.

Initially, officials said the Thruway had been mismanaged for years and that the $90 million from the toll hike was needed to stop the bleeding. They said at the time the increase had nothing to do with a potential $5 billion plan by Cuomo and the authority to build a new downstate bridge over the Hudson River.

Next up came the acknowledgement that there was a connection: If the toll hike didn't go through, it could lead to rating downgrades on agency borrowings ? and that could raise the price of the bridge project.

In the early fall, the agency borrowed $1.1 billion on the bond market.

It told investors ? in a legal document ? that it "has no reason to believe" that the toll hike plan as proposed would be scuttled. That document told investors the plan would go into effect in late September.

A series of delays, including two postponements of Thruway board meetings in one week, then hit the toll hike

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

plan. That led Donna Luh, a representative from Western New York on the agency's board who serves as vice chairwoman, to blast her own agency in an article in The Buffalo News. She said agency officials were keeping board members in the dark about the toll plan and that she no longer believed the increase was necessary.

At two recent events, Cuomo then began lashing out at the idea proposed by his own agency.
At one event, he said such a toll hike could be "detrimental" to the state's economy, followed by another event at which he told reporters the toll hike should only be considered as a "last resort" ? a quote he repeated Monday with word of the Thruway's retrenchment on the matter.
email: tprecious@buffnews.com

---- INDEX REFERENCES ---

NEWS SUBJECT: (Economic Development (1EC65); Economic Policy & Policymakers (1EC69); Economics & Trade (1EC26); Public Finance (1PU60); Taxation (1TA10))

INDUSTRY: (Trucking (1TR88); Accounting, Consulting & Legal Services (1AC73); Freight Transportation (1FR88); Transportation (1TR48); Land Transportation (1LA43))

REGION: (USA (1US73); North America (1NO39); Americas (1AM92); U.S. Mid-Atlantic Region (1MI18); New York (1NE72))

Language: EN

OTHER INDEXING: (Thomas Madison; Tim Kennedy; Donna Luh; Kendra Hems; Thomas DiNapoli)

EDITION: Final

Word Count: 1271
12/18/12 BUFFALONWS A1
END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Exhibit 2

9/6/12 Daily Gazette (Schenectady, N.Y.) A1
2012 WLNR 18964398
Loaded Date: 09/06/2012

Daily Gazette, The (Schenectady, NY)
Copyright 2012 The Daily Gazette Co. All Rights Reserved.

September 6, 2012

Section: A: Front

Truck toll hike opposition cites harm to state recovery

JUSTIN MASON
Gazette Reporter

Nearly 60 percent of the supplies used at Dimension Fabricators come via the state Thruway.

Company CEO Scott Stevens said his trucks hauling steel into the Glenville plant and rebar out to customers typically spend about $62,000 in tolls along the 570-mile system over the course of a year. And that cost could increase by roughly $28,000 if a proposed 45 percent toll increase for trucks is implemented by the Thruway Authority

"If it doesn't come in a rail car, it has to come on the Thruway for a significant part of the ride," he said.

The hike probably wouldn't imperil the growing company of 60-plus workers, but it certainly wouldn't make doing business any easier. Stevens said the proposed toll hike would be yet another dig into his bottom line as he already contends with rising costs.

"It's sort of like death from a thousand cuts," he said.

This sentiment was shared by David Golub, senior vice president of administration for the Schenectady-based Golub Corp. He said the proposed hike will cost about $250,000 extra per year for Price Chopper's fleet of trucks alone and send a ripple of cost increases that will ultimately reach consumers.

For instance, about 71 percent of the shipping companies hauling products into the grocer's five distribution facilities in Rotterdam and Guilderland use the Thruway. He said the combined cost of the proposed increase will translate into a higher cost for goods at a time when the economy is already weak.

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

"It will serve as a tax on businesses and consumers," he said. "It's going to hit everybody."

Golub and Stevens were among about two dozen business owners and trade association members railing against the proposed hike during a public hearing Wednesday, hosted by five Republican state assemblymen. Assemblymen James Tedisco and Steve McLaughlin arranged the forum at the Alfred E. Smith Building after the Thruway Authority solicited comments about the hike in Newburgh, Syracuse and Buffalo, but failed to host a public hearing in the Albany area.

questions timing

Tedisco, R-Glenville, blasted the authority for proposing another toll hike after imposing four since 2005. He questioned why the authority would boost tolls at a time when the state is struggling to rebound economically.

"Everyone knows that when the cost of goods and services goes up, businesses either cut back their workforce reduce their economic footing or pass the costs on to the consumer," he said. "In many cases, it's all three."

The toll hike was proposed for trucks with three axles or larger and was proposed in May as a way to put the authority on sound financial footing.

The authority could approve the increase later this month, meaning the new toll could take effect starting in October. Executive Director Thomas Madison said the increase is aimed at ensuring the authority has the capital available to keep the highway safe, since it receives no tax money for repairs.

"The proposed toll increase is targeted to address the inequality that exists between cars and large commercial trucks, which put thousands of times more wear and tear on the road but are charged only five times as much as passenger vehicles," he said in a statement released Wednesday.

But business leaders and legislators attending the hearing weren't convinced. Many questioned why such an increase is being considered at a time when the state is desperately trying to foster a more positive climate for business.

"This is like one step forward and two steps back," said McLaughlin, R-Melrose. "This really sets us back on the progress of economic development."

Some suggested the authority finally shed the Canal Corporation, which also operates the Erie Canal. Others called for the authority itself to be dissolved so that the Thruway could come under the control of the state Department of Transportation, which is funded through the state's general fund.

"Heck, Massachusetts did it," said Stevens, referring to the Bay State's creation of an over-arching agency to

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

oversee the Massachusetts Turnpike in 2009.

Julie Suarez, a spokeswoman for the New York Farm Bureau, said the hike will place even more of a burden on the state's agricultural businesses. She said farmers struggling with increased fuel costs and poor weather conditions -- ranging from floods to draughts -- are ill-prepared to cope with the added cost.

"Farmers now are already in a very difficult economic position," she said.

Minden Supervisor Tom Quackenbush said the hike could also have the effect of driving big rigs onto non-toll road that aren't designed to hold such a weight capacity. He characterized the hike as a way to pass on the Thruway Authority's deficit onto businesses and consumers.

"It's another tax," he said. "There's no way around that."

Reach Gazette reporter Justin Mason at 395-3113 or jmason@dailygazette.net

---- INDEX REFERENCES ---

COMPANY: CANAL CORP; GOLUB CORP (THE)

NEWS SUBJECT: (Local Taxing Authorities (1LO66); Taxation (1TA10))

INDUSTRY: (Freight Transportation (1FR88); Transportation (1TR48); Passenger Transportation (1PA35); Railroads (1RA98); Automotive Alternative Fuels (1AU34); Energy & Fuel (1EN13); Passenger Railroads (1PA89); Accounting, Consulting & Legal Services (1AC73); Automotive Environmental Initiatives (1AU68); Land Transportation (1LA43); Automotive Fuels (1AU95); Oil & Gas (1OI76); Trucking (1TR88); Freight Railroads (1FR84))

REGION: (Massachusetts (1MA15); U.S. Mid-Atlantic Region (1MI18); North America (1NO39); U.S. New England Region (1NE37); Americas (1AM92); USA (1US73); New York (1NE72))

Language: EN

OTHER INDEXING: (Steve McLaughlin; Assemblymen James Tedisco; Thomas Madison; Scott Stevens; David Golub; Julie Suarez; Minden Supervisor Tom Quackenbush)

EDITION: Schenectady/Albany; Final

Word Count: 808
9/6/12 DLYGAZSCHTDY A1
END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

# Exhibit 3

Westlaw.

9/8/12 Daily News (Batavia, N.Y.) 9A
2012 WLNR 19642298
Loaded Date: 09/15/2012

Daily News, The (Batavia, NY)
Copyright 2012 Johnson Newspaper Corporation

September 8, 2012

Section: Local News

Gallivan plan would separate: canal system, T-way Authority

bbeagle@batavianews.com
Ben Beagle

State Sen. Patrick Gallivan, R-Depew, plans to file legislation Monday that would separate the state's canal system from the New York State Thruway Authority.

The proposal, supported by Sen. Mark Grisanti, R-Buffalo, would return the canal to the Department of Transportation. The canal system has been overseen by the Thruway Authority since 1992.

Gallivan, whose 59th district includes Wyoming County, said the change would save the Thruway Authority millions each year and help prevent toll increases. He announced his proposed legislation Wednesday in a letter to Thruway Authority Chairman Howard Milstein.

"We hope that you will consider supporting this proposal as an alternative to increasing tolls," Gallivan said in the letter.

The Authority is considering a plan to increase tolls as much as 45 percent for large commercial vehicles -- those with three or more axles -- as the Authority deals with increasing maintenance an health care costs. The increase is scheduled to be in place Sept. 30.

"What the Thruway Authority has described as a 'modest' toll increase, we call unacceptable," Gallivan said Wednesday during a news conference at Canalside, the historic terminus of the Erie Canal on Buffalo's waterfront. He was joined by Grisanti and Assemblyman Dennis Gabrzyszak, D-Cheektowaga,

"The state has made significant strides the past two years to reform state government and repair the state's reputation as hostile to private business; any proposal to hike Thruway tolls on private businesses will be detrimental to small businesses and local farms, and only further hinder New York's economic recovery," he said.

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

The Authority has increased tolls four times in the past seven years, most recently in January 2010 when tolls increased 25 percent for all drivers.

The latest proposal meeting opposition from many groups, including lawmakers and local officials, farmers, business groups and government watchdogs, who say the increase would hurt trucking businesses while driving consumer prices upward. An increase would also likely force local governments to raise taxes to repair local roads that will see increased use by truckers looking to save money by avoiding tolls.

Unshackle Upstate and the New York chapter of the the National Federation of Independent Business have cited a pair of audits, including an internal audit by the Thruway Authoity, that identified wasteful spending habits at the Thruway Authority.

The Thruway Authority has claimed a need for the toll increase to cover a $90 million budget deficit -- a gap worsened by losses incurred by canal operations.

"Just this year, the canal system is projected to require $55.7 million for operating expenses and $51.4 million for capital expenses," wrote Gallivan, chairman of the Senate's Commerce, Economic Development and Small Business Committee.

"At the same time, annual revenue from the canal system totals only $2 million, a small fraction of its annual cost. This gap in revenue has to be covered each and every year by commuters and commercial drivers using the Thruway."

By returning control of the canal system to DOT, the canal's cost and operation would be subjective to legislative oversight through the annual state budget process.

"I believe the administrative and cost responsibility of the canal system should shift to a state agency that has more experience in efficiently managing the state's diverse array of physical infrastructure," Gallivan said.

In July, Gallivan submitted a formal letter of opposition to any planned toll hike to the Thruway Authority's Chairman, and reiterated his opposition in August through formal testimony submitted at a public hearing conducted by the Thruway Authority.

---- INDEX REFERENCES ---

NEWS SUBJECT: (Local Taxing Authorities (1LO66); Economic Policy & Policymakers (1EC69); Economic Development (1EC65); Public Finance (1PU60); Economics & Trade (1EC26); Taxation (1TA10))

INDUSTRY: (Freight Transportation (1FR88); Trucking (1TR88); Transportation (1TR48); Accounting, Consulting & Legal Services (1AC73); Land Transportation (1LA43))

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

REGION: (USA (1US73); U.S. Mid-Atlantic Region (1MI18); North America (1NO39); New York (1NE72); Americas (1AM92))

Language: EN

OTHER INDEXING: (Dennis Gabrzyszak; Mark Grisanti; Patrick Gallivan; Howard Milstein)

Word Count: 574
9/8/12 DLYNSBATAVIA 9A
END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

# Exhibit 4

Westlaw

8/21/12 SYRACUSE A13

8/21/12 Syracuse Newspapers A13
2012 WLNR 17741121
Loaded Date: 08/22/2012

Post Standard
Copyright 2012 The Post-Standard

August 21, 2012

Section: Opinion

THRUWAY TOLL HIKE
COMPTROLLER: GET YOUR OWN HOUSE IN ORDER FIRST

Thomas P. DiNapoli State Comptroller

The state Thruway Authority is planning to raise tolls paid by certain trucks by an average of 45 percent in September. The authority calls this a "modest" increase. Thruway officials should take a closer look at their own operations before implementing a toll hike of this magnitude.

The Thruway raised tolls on all classes of vehicles in 2005, 2008, 2009 and 2010. The proposed increase would represent the fifth increase in seven years. Unlike previous toll increases, this one would not directly hit motorists who drive passenger vehicles or small trucks.

But that doesn't mean the new cost would only hit big trucking companies. Thousands of small businesses rely on large commercial vehicles for shipment of materials and parts, and delivery of finished products to their customers. Their transportation costs would inevitably go up. The same would happen to grocery stores and other retailers -- meaning the higher tolls would likely drive up costs for consumers throughout the state.

Clearly, some shippers and truck drivers would look for alternative routes to escape the 45 percent increase. Taxpayers will end up picking up the incremental costs for repairs to state and local highways that experience more rapid deterioration due to an increase in heavy traffic.

A consultant hired by the authority issued a report in May suggesting the Thruway may need "further actions" to meet its financial requirements by 2015 -- meaning yet another system-wide toll increase may not be far off. And this does not take into account additional revenue the authority may need to construct the new Tappan Zee Bridge, which has a multi-billion dollar price tag.

It's no surprise that the Thruway's finances have been deteriorating. A report that I issued last week raised serious questions regarding the authority's management decisions and financial practices. In a bizarre twist, probably to

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

divert attention, Thruway leaders responded by blaming my office for their rising costs, saying we had failed to stop years of fiscal gimmicks at the authority.

In fact, we have issued 14 audits and other analyses of the Thruway over the last five years. In these reports, my auditors pointed to issues such as inappropriate use of Thruway vehicles by board members, fuel prices at Thruway travel plazas that exceeded approved levels, and failure to prioritize reconstruction and maintenance projects. I commend these and other constructive criticisms to the attention of Thruway management.

Thruway leadership does acknowledge some past mistakes. The authority expects to achieve an average of $30 million in annual operating cost reductions over the next four years.

But it is still not clear that the authority has done all it can to control costs and maximize existing revenue before imposing yet another toll increase on New Yorkers.

For example,the Thruway's own outside consultants found earlier this year that the authority could save tens of millions of dollars annually with operational efficiencies such as elimination of vacant positions, reductions in overtime, and marketing of unused property for lease or sale. A recent analysis by my auditors concluded that more could be done to collect millions of dollars in E-Z Pass tolls and fees that currently go unpaid. The governor's Spending and Government Efficiency Commission has estimated that annual savings of $50 million or more may be attainable from consolidation of functions among the Thruway and the state's other transportation agencies.

In 1992, the state moved responsibility for the historic Canal System from the Department of Transportation to the Thruway Authority. More than $1 billion of Thruway toll revenues have gone to pay operating and capital costs for the canals in the two decades since -- a period when boating activity on the canals has declined sharply. The Thruway Authority should commission an independent analysis that would identify potential new funding streams for the Canal System and develop a realistic vision for its future role in the Upstate economy.

The Thruway Authority is planning to impose higher costs on users while other, less economically harmful options may yet be possible. At a time when many working New Yorkers are struggling to make ends meet, any toll increase should be a last resort.

Thomas P. DiNapoli is the comptroller of the state of New York. Disclaimer:

---- INDEX REFERENCES ---

INDUSTRY: (Automotive Fuels (1AU95); Transportation (1TR48); Automotive Environmental Initiatives (1AU68); Energy & Fuel (1EN13); Oil & Gas (1OI76); Passenger Transportation (1PA35); Auditing (1AU03); Accounting, Consulting & Legal Services (1AC73); Traffic (1TR52); Accounting (1AC78); Automotive Alternative Fuels (1AU34))

REGION: (USA (1US73); New York (1NE72); Americas (1AM92); North America (1NO39); U.S. Mid-Atlantic

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Region (1MI18))

Language: EN

OTHER INDEXING: (THRUWAY)

EDITION: Final

Word Count: 691
8/21/12 SYRACUSE A13
END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

# Exhibit 5

9/16/12 Advance-News (Ogdensburg, N.Y.) 2
2012 WLNR 19694543
Loaded Date: 09/16/2012

Advance-News (Ogdensburg, NY)
Copyright 2012 Johnson Newspaper Corporation

September 16, 2012

Section: News

Toll Increases Worry Carriers

TED BOOKER

Set to take effect Sept. 30 if it's not repealed, a 45 percent toll increase imposed by the state Thruway Authority for large commercial vehicles has trucking carriers and distributors in the north country preparing to pass on higher costs to their customers. As a result, industry experts say, consumers can expect prices to go up on everything from bread to lumber.

Operating a trucking business in New York is challenging due to tight regulations and high gas prices. But increasing the toll for 18-wheelers could make New York one of the worst states for a trucker to drive in the Northeast, said Joseph T. Teal, vice president of Teal's Express Inc., 224411 Teal Drive. The carrier, which has 11 distribution centers across the Northeast, completes most of its travels out of state along the Thruway with its fleet of 126 trucks.

"Our Thruway bill runs between $10,000 to $20,000 per month depending on how much we're on the freeway," Mr. Teal said. With a 45 percent toll increase, Teal's annual cost be an additional $100,000 or more.

While the company doesn't want to pass on higher prices to its customers, he said, it likely won't have a choice unless the authority votes to repeal the law, which it approved in May, before the end of the month.

"As everything goes up, our bottom-line starts to disappear," he said. "We're going to try to absorb the costs when they go up, but (our customers) will probably be faced with the same problem we are. If it costs more to get products on their shelves, they're going to raise prices. It affects the guy who's buying a loaf of bread, gallon of milk. The lady that's buying a pair of sneakers."

Mr. Teal said the carrier draws about $20 million a year of its annual revenue by shipping products to businesses in the north country. In the Watertown area, examples include White's Lumber, Samaritan Medical Center and other hospitals, auto dealerships including Davidson's and Fuccillo, and manufacturers at Jefferson County Cor-

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

porate Park off Coffeen Street.

The authority has stated it is increasing the tolls on large trucks because they are responsible for most of the damage to roads and bridges. The toll now for a three-axle truck traveling from Buffalo to New York City is about $88. But that would increase to $127 under the agency's plan.

But at the same time, the authority plans to spend $436.5 million to maintain the state Canal System from 2013 to 2016.

"The largest problem with the agency is they're still in charge of the Canal System, and that's been the biggest draw on their financial venture," Mr. Teal said.

Food distributor Renzi Brothers Inc., 90 Rail Drive, would be affected by higher costs for inbound and outbound truck loads because of the increased toll, said co-owner John M. Renzi. The food distributor has a fleet of 26 trucks that does business in six Northeast states from Ohio to Maine.

"Any trucker that delivers to me is going to charge me more and drive prices of goods up, and that's going to impact how much I sell them for," Mr. Renzi said.

Renzi's, which does business with several local grocery stores, will make an effort to avoid raising prices, Mr. Renzi said. But if the food distributor can't do so, costs eventually will trickle down to the consumer.

"I don't think most distributors are going to eat the cost," Mr. Renzi said. "They're going to pass it on to the consumer. It will impact grocery, department and hardware stores, and any retail outlets getting their goods through trucking."

The last time tolls were raised on the 641-mile highway was in 2010, when the average toll for all drivers was hiked by over 25 percent.

---- INDEX REFERENCES ---

COMPANY: TEALS EXPRESS INC; RENZI BROS INC

INDUSTRY: (Trucking (1TR88); Energy & Fuel (1EN13); Land Transportation (1LA43); Automotive Environmental Initiatives (1AU68); Healthcare (1HE06); U.S. National Healthcare Reform (1US09); Freight Transportation (1FR88); Automotive Alternative Fuels (1AU34); Healthcare Regulatory (1HE04); Transportation (1TR48); Oil & Gas (1OI76); Automotive Fuels (1AU95))

REGION: (Americas (1AM92); USA (1US73); New York (1NE72); North America (1NO39); U.S. Mid-Atlantic Region (1MI18))

Language: EN

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

OTHER INDEXING: (RENZI BROTHERS INC) (Joseph Teal; John Renzi)

KEYWORDS: DCO Front Page Spotlight; OGD Front Page Spotlight

Word Count: 661
9/16/12 ADVNEWSNY 2
END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.